UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

WOODROW FLEMMING,                           :

                Petitioner,      :
                                        06 Civ. 15226 (RJH)(HBP)
   -against-                            :

                                   REPORT AND
STATE OF NEW YORK and                       :   RECOMMENDATION
SUPERINTENDENT R. WOODS,
                            :
                Respondents.      :
----------------------------------X

        PITMAN, United States Magistrate Judge:

        TO THE HONORABLE RICHARD J. HOLWELL, United States

District Judge,


I.  Introduction

        Petitioner Woodrow Flemming seeks, by his pro se

petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, an Order vacating a judgment of conviction entered on

September 15, 2003, by the Supreme Court, New York County

(Tejada, J.).  Flemming was convicted, upon his plea of guilty,

of grand larceny in the second degree, in violation of New York

Penal Law Section 155.40(1).  Pursuant to this conviction and a

negotiated plea agreement, Flemming was sentenced to an indeter-

minate term of imprisonment of six to twelve years.  Petitioner

is currently incarcerated pursuant to that judgment.

For the reasons set forth below, I respectfully recommend that the petition be denied.

II.   Facts[1]

    A.   Facts Underlying
       Flemming's Claim

In March 2002, Flemming was arrested and charged with multiple crimes in connection with his participation in a fraud on charities that assisted individuals and businesses in lower Manhattan that were adversely affected by the September 11, 2001 attacks on the World Trade Center.  The prosecution alleged that, between October 2001 and March 2002, Flemming had obtained more than $10,000 in financial assistance from Safe Horizon and the Red Cross by falsely representing in claim forms that he had worked as a street vendor near the World Trade Center and that he had been unable to return to his place of business as a result of the mass murders committed on September 11, 2001.

---

[1]The facts set forth herein are based on the statement of facts set forth in Flemming's brief to the Appellate Division of the Supreme Court, annexed as Exhibit L to the Amended Declaration of Jodi A. Danzig, Esq., in Opposition to the Amended Petition for Habeas Corpus, dated April 6, 2009 ("Danzig Decl."). Because the facts of the offense are not implicated by Flemming's claims, and because the version of the facts in Flemming's brief is, presumably, the view of the evidence most favorable to Flemming, Flemming is not prejudiced by my reliance on the statements in his brief.

The prosecution also alleged that Flemming had stolen an additional amount in excess of $90,000 from the same charities by recruiting more than a dozen individuals to pose as his workers and to submit false claims to the charities.  Flemming supplied the "workers" with forged W-2 forms, forged employment verification letters, and fictitious landlord letters that verified their monthly rent and arrears.  Some or all of these landlord letters were purportedly signed by Flemming's wife, Lola Skinner.  Flemming allegedly paid each of his "workers" a small amount in cash in exchange for their benefit checks.

      B.   Pertinent State
           Court Proceedings

         1.   Proceedings Prior to
             Flemming's Guilty Plea

After Flemming's arrest, New York grand juries charged Flemming in indictment number 1337/02, filed on March 22, 2002, and indictment number 1792/02, filed on April 22, 2002.  According to the prosecution's brief to the Appellate Division, Flemming was charged in 42 counts in indictment 1337/02, including one count of grand larceny in the second degree, 17 counts of grand larceny in the third degree and 13 counts of forgery in the second degree (Brief for Respondent, dated January 2006, annexed as Ex. M to Danzig Decl. 3).  Indictment 1792/02 charged Flemming with an additional ten counts, including six counts of grand

3

larceny in the third degree and two counts of forgery in the
second degree (Brief for Respondent, dated January 2006, annexed
as Ex. M to Danzig Decl. 4).   Flemming initially pleaded not
guilty to all charges, and the indictments were consolidated for
trial under indictment number 1337/02.   Because indictment
1792/02 was still outstanding after the consolidation, the Trial
Court subsequently dismissed indictment 1792/02 to eliminate the
redundant charges (P.[2] 48).[3]

2.   Flemming's Guilty Plea

On June 4, 2003, Justice Tejada was about to commence
the trial when Flemming stated on the record, that, after a
discussion with counsel, he was interested in pleading guilty,
with the understanding that his sentence would be six to twelve
years (P. 15-17).   Flemming withdrew his previously-entered plea
of not guilty and substituted a plea of guilty to one count of

_____

[2]"P." refers to the transcript of the guilty plea proceed-
ings before the Trial Court on June 4, 2003, annexed as Ex. A to
the Danzig Decl.

[3]Neither Flemming's briefs to the Appellate Division nor his
submissions to this court present a coherent alternative explana-
tion of the events surrounding his indictments.   In a declaration
submitted to this Court on June 4, 2008, over a year after
Flemming filed his amended petition, Flemming stated that indict-
ment 1337/02 was dismissed on August 28, 2002, by the Justice in
Part 31 of the Supreme Court.   However, Flemming concedes that
the Justice in Part 31 of the Supreme Court nevertheless consoli-
dated indictment 1792/02 with indictment 1337/02 on September 10,
2002 (Declaration of Woodrow Flemming, dated June 1, 2008, ¶¶ 16-
17).

second-degree grand larceny, a class C felony, in full satisfac-
tion of the consolidated charges against him (P. 16-17, 40).
Flemming's counsel observed that Flemming had decided to plead
guilty after "much negotiation over a period of fourteen months
and a final negotiation today" (P. 17).

In his plea allocution, Flemming agreed that he had had
an opportunity to discuss the matter fully with his lawyer (P.
19). However, when the Trial Court asked, "So, you don't need to
speak to your lawyer anymore about pleading guilty, is that
correct?" Flemming replied, "Yes. Give me one minute," and the
Trial Court responded, "Yes, sure, go ahead" (P. 20). The Trial
Court then paused the proceedings while Flemming conferred with
his lawyer (P. 20). Flemming then agreed that he was ready, and
that he had had the opportunity to discuss the matter fully with
his lawyer (P. 20-21).

The Trial Court then advised Flemming, and Flemming
acknowledged that he understood, that he was giving up his right
to trial by jury, his right to have the prosecutor prove his
guilt beyond a reasonable doubt, his right to confront witnesses,
his right to present witnesses, and his right to testify (P. 22-
23).

Flemming subsequently acknowledged that he had worked
with a group of other people -- including eighteen individuals
whom he named under oath -- to help them steal a total of more

than $50,000.00 from the Red Cross and Safe Horizon (P. 27-31).
However, Flemming resisted the suggestion that he himself had
applied for and collected benefits from the charities to which he
was not entitled (P. 24-25).  Flemming agreed three times that he
was pleading guilty because he was guilty (P. 18, 21, 39).
Flemming also stated four times that he was pleading guilty
voluntarily (P. 18-21, 39), stating on one occasion, "I'm going
to take the plea of my own free will" (P. 19-20).  Flemming
further agreed that no one had threatened him, promised him
anything or forced him in any way to plead guilty (P. 19).  He
subsequently expressly confirmed that his lawyer had not promised
him anything or forced him in any way to plead guilty (P. 39).
Flemming also twice confirmed that everything that he had said
under oath was true (P. 39).

  The Trial Court subsequently questioned Flemming
concerning the forged letters containing his wife's signature,
which led to a discussion of whether Flemming's wife could be
prosecuted:

    THE COURT:  Also, with respect to the letter that has
your wife's signature on it, do you want to say some-
thing with respect to that?

    FLEMMING:  Yes, I do.

    Judge, this letter has my wife's signature on it,
dated December 5, 2001.

    Judge, <u>because I was informed that my wife would
be prosecuted</u>, my wife never -- She was never aware.

She never knew anything about the letter.  She never
even seen the letter.

        And, like I said, this is a letter that I put
together myself, you know, and I swore under oath she
did not sign it.  She never even saw it.

THE COURT:  You signed it yourself?

FLEMMING:  Yes, sir, your Honor.  She was never aware
of it.  I showed my attorney the same signature of the
letter.

[FLEMMING'S COUNSEL]:  <u>Judge, for the record, I didn't</u>
<u>tell the defendant she would be prosecuted.</u>  <u>I said she</u>
<u>could be prosecuted</u>.

<u>But by his statement, if it's the truth she signed it,</u>
<u>chances are that the People would not elect to prose-</u>
<u>cute her for something that he has already taken the</u>
<u>blame for</u>.

THE COURT:  Is that what that's over?

FLEMMING:  Yes, your Honor.

(P. 35-36 (emphasis added)).

                3.  Adjudication of
                    Flemming's Status as
                    <u>a Second Felony Offender</u>

        The Trial Court proceeded to address the issue of

Flemming's prior felony convictions.  The prosecution alleged

that Flemming had been convicted in November 2000 of the felony

of attempted criminal sale of a controlled substance in New York,

and that he had been convicted in March 1998 of felony possession

of cocaine in North Carolina (P. 42).[4]  Flemming did not dispute these convictions, but claimed that his appeal from the New York conviction was still pending (P. 43, 46).

The Trial Court then adjudicated Flemming a second felony offender, noting that if his New York conviction was overturned and his North Carolina conviction did not qualify as a predicate felony conviction under New York law, Flemming would be sentenced to a term of four to twelve years, instead of six to twelve years (P. 46).[5]

_____

[4]Apparently, neither the Trial Court nor the prosecution was aware that Flemming was going to plead guilty on June 4, 2003, and, thus, neither had confirmed whether Flemming's North Carolina conviction qualified as a predicate felony conviction under New York law (P. 46).

[5]Although the Trial Court spent considerably more time inquiring into the status of Flemming's prior North Carolina conviction, it was clear that the Trial Court adjudicated Flemming as a second felony offender on the basis of both convic-tions.  The Trial Court stated:

> What I will do is the following.  Should sometime in the future we f[i]nd out . . . that that North Carolina conviction does not qualify you as a predicate felon, or the Bronx conviction is overturned, and that would-n't qualify you as a predicate felon, consequently, you won't qualify under that conviction.
>
> If you are found not to be a predicate felon in the statute, of course, then the sentence of six to twelve would be an illegal sentence because that sen-tence could not be a sentence that is given for this crime, the crime you pled guilty to, if you are not a predicate felon.
>
> So, in the event that happens, and based on my conference with counsel, their opinion is it will not
>                                                          (continued...)

8

The Appellate Division subsequently affirmed Flemming's
prior conviction for attempted criminal sale of a controlled
substance in the third degree, <u>People v. Flemming</u>, 308 A.D.2d
385, 386, 764 N.Y.S.2d 408, 409 (1st Dep't 2003), and the Court
of Appeals denied leave to appeal, 1 N.Y.3d 571, 807 N.E.2d 901,
775 N.Y.S.2d 788 (2003).  The Appellate Division also denied
Flemming's motion for a writ of error coram nobis challenging
that conviction.  <u>People v. Flemming</u>, 13 A.D.3d 1234, 787
N.Y.S.2d 674 (1st Dep't 2004).

              4.  Flemming's Motion to
                  <u>Withdraw His Guilty Plea</u>

          Following his guilty plea, but prior to sentencing,
Flemming moved the Trial Court to withdraw his guilty plea on the
grounds that the prosecution had unconstitutionally coerced him
into agreeing to the plea bargain by threatening him with the
possible prosecution of his wife.  Flemming's newly appointed
counsel submitted an affirmation, and Flemming submitted a
supplemental affidavit in support of the motion (Affirmation of

_____

         [5](...continued)
            happen either[,] [t]he sentence would then be four to
            twelve.

(P. 46-47).  Although the Trial Court may not have been com-
pletely clear in explaining to Flemming that his prior New York
conviction alone was sufficient to adjudicate him a second felony
offender, the Trial Court made clear that Flemming's second
felony offender status would ultimately be determined in accor-
dance with the New York statute.

Theodore M. Herlich, Esq., dated Aug. 1, 2003, and Affidavit of
Woodrow Flemming, sworn to Aug. 13, 2003, annexed as Exs. B & C,
respectively, to Danzig Decl.).  In response, the prosecution
submitted an affirmation stating, among other things,

> At no point did the [prosecution] do anything to sug-
> gest that [Flemming's] plea was connected to his wife's
> prosecution one way or the other.  The defendant's plea
> was actively initiated and pursued by him and the
> People's position was . . . merely that he should
> receive the maximum incarceration allowable for a "C"
> felony and that he should fully allocute to the
> charges.

(Affirmation of Diana Florence, Esq., dated Sept. 12, 2003,
annexed as Ex. D to Danzig Decl., ¶ 9).  On September 15, 2003,
Justice Tejada summarily denied Flemming's motion to withdraw his
plea (S.[6] 3).

### 5.  Flemming's Sentencing

On the day of sentencing, the prosecution informed the
Trial Court that it did not believe that Flemming's North
Carolina constituted a predicate felony conviction within the
meaning of the relevant recidivist statute, New York Penal Law
Section 70.06.1(b) (S. 4).  Nevertheless, the prosecution main-
tained, and Flemming's counsel agreed, that Flemming should be
sentenced to six to twelve years based on his prior New York

---

[6]"S." refers to the transcript of the sentencing proceedings
before the Trial Court on September 15, 2003, annexed as Ex. E to
the Danzig Decl.

conviction, with the proviso that, should that conviction be overturned, Flemming would be resentenced to four to twelve years (S. 5-6).  The Trial Court subsequently sentenced Flemming to six to twelve years in prison (S. 11).

      6.  <u>Flemming's Direct Appeals</u>

      Flemming, represented by new counsel, appealed his conviction to the Appellate Division of the Supreme Court, First Department.  Flemming's counsel argued that the Trial Court committed reversible error by (1) denying Flemming's motion to withdraw his guilty plea without conducting a detailed inquiry to establish the voluntariness of Flemming's plea, in violation of his state and federal constitutional rights, and (2) violating his federal constitutional right to a speedy trial (Brief for Defendant-Appellant, dated June 2005, annexed as Ex. L to Danzig Decl.).  Flemming's counsel also challenged Flemming's sentence as excessive in light of the non-violent nature of the offense and Flemming's poor health (Brief for Defendant-Appellant, dated June 2005, annexed as Ex. L to Danzig Decl.).

      Flemming also filed a <u>pro</u> <u>se</u> supplemental brief, entitled, "Permission to File Supplement[al] Brief [and] Statement[s] and M[e]mora[n]dum of Law," that raised the follow-ing issues, which Flemming claimed to be federal constitutional

violations:[7]   (1) Flemming was arrested without probable cause
because "the arresting officer statement [was] without any facts
or proof to claims and [was] not base[d] on any firsthand knowl-
edge," (2) the prosecution did not provide Flemming with discov-
ery required by law, including prior witness statements and
"Brady," (3) the Trial Court denied Flemming an unspecified
motion to suppress evidence, (4) the prosecution failed to give
Flemming notice of its intent to offer certain evidence as
required by New York Criminal Procedure Law § 710.30, (5) grand
juries improperly indicted Flemming in multiple counties and the
prosecution improperly consolidated those indictments, (6)
Flemming's plea was involuntarily induced, (7) the prosecution
violated Flemming's right to a speedy trial, (8) the evidence
against Flemming was insufficient, (9) Flemming was prejudiced by
not being able to prepare for his defense at trial, (10) trial
counsel was ineffective because he advised Flemming to plead
guilty without researching the law, and (11) Flemming had not
waived the issues of insanity and mental illness (Permission to
File Supplement[al] Brief [and] Statement[s] and M[e]mora[n]dum
of Law, dated July 21, 2005, annexed to Amended Petition Under 28

---

[7]The Appellate Division apparently deemed this brief to be
Flemming's pro se supplemental brief, even though it was styled
as a request for permission to file such a brief (Letter from
Carl S. Kaplan, Esq., to Hon. Judith Kaye, Chief Judge, Court of
Appeals, dated Apr. 6, 2006, annexed as Ex. P to Danzig Decl.).

U.S.C. § 2254 for Writ of Habeas Corpus, dated June 7, 2006
("Pet.")).

The prosecution opposed Flemming's <u>pro se</u> arguments by
stating that they were "all frivolous" and untimely filed (Brief
for Respondent, dated January 2006, annexed as Ex. M to Danzig
Decl., 4 n.4).  Flemming subsequently submitted a <u>pro se</u> reply
brief, in which he argued for the first time that the Trial Court
improperly sentenced him as a predicate felony offender (Reply
Brief Against Respondent, dated Jan. 24, 2006, annexed as Ex. N
to Danzig Decl.).[8]

The Appellate Division unanimously affirmed Flemming's
conviction on March 9, 2006.  <u>People v. Flemming</u>, 27 A.D.3d 257,
811 N.Y.S.2d 35 (1st Dep't 2006).  The Appellate Division found
that the Trial Court properly exercised its discretion in denying
Flemming's motion to withdraw his plea and had properly rejected
Flemming's assertion that the prosecution had induced his plea by
means of threats or promises concerning the possible prosecution
of his wife because, based on "submissions by defendant, defense
counsel and the prosecutor, as well as the detailed plea allocu-
tion and the [Trial C]ourt's familiarity with the case," the
claims were baseless.  27 A.D.3d at 258, 811 N.Y.S.2d at 36.  The

---

[8]Respondents erroneously characterize Flemming's reply brief
as his sole supplemental brief (Respondents' Amended Memorandum
of Law in Opposition to the Amended Petition for a Writ of Habeas
Corpus, dated Apr. 6, 2009 ("Resp'ts' Br."), 8).

Appellate Division also found that Flemming's guilty plea fore-closed the possibility of review of his speedy trial claim, and it found "no basis" for reducing Flemming's sentence.  27 A.D.3d at 258, 811 N.Y.S.2d at 36.  Finally, the Appellate Division rejected Flemming's supplemental claims by stating that it had reviewed the claims and found them "unavailing."  27 A.D.3d at 258, 811 N.Y.S.2d at 36.

Both Flemming and his attorney applied for leave to appeal to the New York Court of Appeals, based on "all points raised in defendant-appellant's main brief, and all points contained in his papers in connection with his supplemental pro se brief, as well as his January 24, 2006 pro se reply brief" (Letter from Carl S. Kaplan, Esq., to Hon. Judith Kaye, Chief Judge, New York Court of Appeals, dated Apr. 6, 2006, annexed as Ex. P to Danzig Decl.).  Flemming also filed a pro se supplemen-tal leave application (Letter from Woodrow Flemming to Hon. Judith Kaye, Chief Judge, New York Court of Appeals, dated Apr. 13, 2006, annexed as Ex. R to Danzig Decl.).  The Court of Appeals denied leave to appeal on June 28, 2006.  People v. Flemming, 7 N.Y.3d 755, 853 N.E.2d 252, 819 N.Y.S.2d 881 (2006), reconsideration denied 7 N.Y.3d 812, 855 N.E.2d 803, 822 N.Y.S.2d 487 (2006).

14

7.   <u>Flemming's Collateral Attacks</u>

Following the Appellate Division's affirmance of his prior conviction for attempted criminal sale of a controlled substance, Flemming moved to set aside his sentence of six to twelve years pursuant to Criminal Procedure Law Section 440.20, arguing that the crime to which he pleaded guilty was not properly in the consolidated indictment and his counsel gave ineffective assistance because "he did not pursue any of my issu[es]" (Notice of Motion to Set Aside Sentence, dated Sept. 27, 2003, annexed as part of Ex. F to Danzig Decl.; Affidavit in Support of Motion to Set Aside Sentence, sworn to Sept. 27, 2003, annexed as part of Ex. F to Danzig Decl.).  Justice Tejada denied Flemming's motion, finding that Flemming's assertions were not credible, "based on the totality of the circumstances surrounding the defendant's plea, including the minutes of the plea allocution, this court's observations and defendant's active participation in the plea negotiations" (Order, dated Jan. 21, 2004, annexed as Ex. G to Danzig Decl.).  Justice Tejada also denied Flemming's two subsequent motions to vacate his sentence because those motions "replicate[d] his prior 440.20 motion which was denied by this Court" and "add[ed] nothing of significance to the claims he previously raised" (Order, dated May 6, 2004, annexed as Ex. J to Danzig Decl.; Opinion, Decision and Order, dated Sept. 26, 2004, annexed as Ex. K to Danzig Decl.).

On April 13, 2004, the Appellate Division denied leave
to appeal Justice Tejada's decision on Flemming's 440.20 motion
(Certificate Denying Leave, dated Apr. 13, 2004, annexed as Ex. I
to Danzig Decl.).

Flemming subsequently moved the Appellate Division for
a writ of error coram nobis on the ground that his appellate
counsel was ineffective.[9]  This motion was denied on May 22, 2007
(People v. Flemming, M-863, 2007 N.Y. App. Div. LEXIS 6461 (1st
Dep't May 22, 2007), annexed as Ex. T to Danzig Decl.).

C.  Federal Court Proceedings

Flemming, proceeding pro se, submitted his original
petition for a writ of habeas corpus to the Office of the Pro Se
Clerk on or about September 1, 2006.[10]  On December 18, 2006, the
Honorable Kimba M. Wood, Chief United States District Judge,
issued an Order directing Flemming to comply with Rule 2(c) of
the Rules Governing Section 2254 Cases in the United States
District Courts (the "Habeas Rules") and to submit an amended

---

[9]Neither side has submitted a copy of this motion (Resp'ts'
Br. 10 n.6).

[10]Flemming petitioned this Court for a writ of habeas corpus
on three prior occasions in connection with his September 15,
2003 conviction.  The Honorable Michael B. Mukasey dismissed
these prior petitions without prejudice as premature.  See
Flemming v. Superintendent, 04 Civ. 5057 (MBM) (S.D.N.Y. June 28,
2004); Flemming v. State of New York, 05 Civ. 457 (MBM) (S.D.N.Y.
Apr. 21, 2005); Flemming v. Woods, 05 Civ. 8412 (MBM (S.D.N.Y.
Dec. 13, 2005) (directed in part at September 2003 conviction).

16

petition within 60 days which included a short and plain state-
ment of every ground for relief upon which he was relying (Order,
dated Dec. 18, 2006, Docket Item 2).  Flemming submitted his
amended petition on or about February 7, 2007, asserting over
fifty purported claims for relief (Pet. 4-11).  Respondents
initially filed an answer to Flemming's amended petition that
failed to address the vast majority of Flemming's claims.
Pursuant to my Order of December 8, 2008 ("Dec. Ord."), respon-
dents submitted an amended answer that addressed Flemming's
claims on April 6, 2009.

     Flemming makes the following claims:

   (1) there was no probable cause to arrest or search Flemming
in March 2002 (Pet. 7; Dec. Ord. ¶ 31);

   (2) Flemming was denied a speedy trial (Pet. 4, 10; Dec.
Ord. ¶¶ 1, 52, 58);

   (3) there were impermissible gaps in the information that
the prosecution disclosed to Flemming in discovery, including an
absence of:  (a) police reports, memo books, stationhouse re-
ports, log books or "arresting officer complaint[s]," (b) "sworn
affidavit[s]," (c) identification[s] of Flemming or mug shots,
(d) "witness statement[s]" or plea agreements of his co-defen-
dants or accomplices, (e) "ADA reports [or] file[s]," (f) excul-
patory information or other evidence contemplated by Brady v.
Maryland, 373 U.S. 83 (1963), (g) disclosures required by People

17

<u>v. Rosario</u>, 9 N.Y.2d 286, 173 N.E.2d 881, 213 N.Y.S.2d 448 (1961), (h) notice of the prosecution's intent to offer into evidence statements made by Flemming to a "public servant" under New York Criminal Procedure Law Section 710.30, and (i) "VDF" or voluntary disclosure forms (Pet. 4, 6-8, 10, 11; Dec. Ord. ¶¶ 3, 6, 7, 25, 33, 34, 45, 54, 57, 58);

(4) the prosecutor improperly instructed the grand jury (Pet. 5; Dec. Ord. ¶ 16);

(5) Flemming's guilty plea was obtained in violation of his privilege against self-incrimination (Pet. 6; Dec. Ord. ¶ 28);

(6) Flemming was improperly denied a mental health examination (Pet. 8; Dec. Ord. ¶ 44);

(7) Flemming was not "inform[ed] of any surcharge nor any condition or upon being release [<u>sic</u>]" (Pet. 8; Dec. Ord. ¶ 41);

(8) a copy of the March 24, 2003 hearing transcript was not part of the trial record, and Flemming was improperly denied his motion to enlarge the record on appeal (Pet. 9; Dec. Ord. ¶¶ 46-49);

(9) Flemming's trial counsel was ineffective (Pet. 6-10; Dec. Ord. ¶¶ 27, 43, 50, 57);

(10) Flemming's appellate counsel was ineffective (Pet. 9-10; Dec. Ord. ¶¶ 50-51, 57);

(11) Flemming's guilty plea was involuntarily induced (Pet. 7; Dec. Ord. ¶ 35);

(12) Flemming's guilty plea was not intelligent because (a) he was not informed of the elements of the crimes with which he was charged prior to taking the plea (Pet. 7; Dec. Ord. ¶ 37), (b) neither the prosecution nor the Trial Court informed him of the charges against him (Pet. 6; Dec. Ord. ¶ 27), and (c) his plea did not "spell out [the] crime" (Pet. 6; Dec. Ord. ¶ 23);

(13) Flemming improperly pled guilty to a charge for which he was not indicted because indictment 1337/02 was dismissed and the consolidation of Flemming's indictments was improper (Pet. 5; Dec. Ord. ¶¶ 10, 14, 15, 17);

(14) there was insufficient evidence to convict Flemming (Pet. 11; Dec. Ord. ¶ 58);[11]

(15) it was improper for the Trial Court to reject Flemming's motion to withdraw his plea, without any factfinding (Pet. 4; Dec. Ord. ¶ 2).

(16) Flemming's sentence was enhanced without a proper predicate (Pet. 8; Dec. Ord. ¶ 38, 40); and

---

[11]Several of Flemming's other "claims" are really just variants of Flemming's claim of insufficient evidence.  For example, Flemming claims that "arrest [number] M02016425 on police voucher 317103 is not his arrest [on] March 14, [2002]," that the arresting officer admitted that he made no reports of his arrest and investigation that "[p]apers and documents are missing out of the court file, not one trace to conviction [sic]" and that "Defendant arrest and statement March 4, 2002 is without proof or evidence deemed to suppress" (Pet. 5-6, 10; Dec. Ord. ¶¶ 14, 30, 32, 55).

(17) the Trial Court improperly conducted a hearing to determine whether Flemming was a second felony offender only after Flemming had already entered his guilty plea (Pet. 8; Dec. Ord. ¶ 39);

Flemming also makes various unexplained and conclusory statements concerning violations of his rights.[12]  The remainder of his claims are unintelligible.[13]

---

[12]The following are examples of such statements:

Denied due process;

[D]ouble jeopardy;

4th Amendment violation;

[F]abricate[d] search warrant; and

[D]efendant['s] conviction is illegal, wrongful[] and improper.

[13]The following are Flemming's unintelligible claims:

2 counties in arrest complaint 3-4-02;

Defendant did not withdraw his pending Article 78 and speedy trial;

Defendant did not waive defect jurisdiction complaint/indictment [sic];

There is [sic] 2 Grand Jury Second (1) 1337-2002 (1) [sic] 1792-2002 both [illegible] Grand Jury;

ADA denied defendant to suppress letter with wife['s] name on it[;] plea page 35 and 36;

There was no probable cause to arrest the defendant['s] wife Lola S[.] Flemming for any wrong doing [sic] plea page 35 and 36 ADA and Lawyer violated;

(continued...)

III.  Analysis

       Respondents concede that Flemming's petition is timely and that, except as noted below, Flemming's claims were fully exhausted (Resp'ts' Br. 22-24).  However, respondents argue that Flemming's claims are waived and unsupported.  In the alternative, they argue that his claims fail on the merits.

    A.  Waived and
       Unsupported Claims

       Respondents argue that a number of Flemming's claims cannot provide a basis for relief because (1) they were extinguished by Flemming's guilty plea and (2) Flemming failed to

---

[13](...continued)
       Defendant did not waive his constitutional right by his plea did forth fit [sic] [his] rights[;] see plea;

       Defendant should have been given severance during trial from accomplice[;] both defendants dispute any role . . . ;

       [N]o matching charges, no date or dates, no places no time to prepare defense;

       Defendant was advis[ed] in Order 78 Index 401464/03 in desire to raise speedy trial issue Dec. 2403.  Defendant was also told in writ to raise motion being denied;

       The [P]eople made no objection during trial[;] is not preserve[d] for review on appeals . . .;

       Violation of change of venue motion [illegible] . . . ; and

       There was no broke down prosecutor [sic] misconduct.

clearly and plainly specify the facts supporting his grounds for relief, in violation of Chief Judge Wood's Order and Rule 2(c) of the Habeas Rules (Resp'ts' Br. 18-19).[14]

### 1. Legal Principles

Flemming's petition must state sufficient facts to allege a federal constitutional violation in his conviction that was not extinguished by his guilty plea.  As the Supreme Court explained in Tollett v. Henderson, 411 U.S. 258, 267 (1973),

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea . . . .

Accord United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006) ("[A] guilty plea does not 'waive' constitutional challenges so much as it conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue[.]"); Whitehead v. Senkowski, 943 F.2d 230, 233 (2d Cir. 1991) ("Generally, a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to

---

[14]In addition, respondents argue that certain claims are not cognizable because they do not raise federal issues.

constitutional rights at issue prior to the entry of the plea.");

cf. United States v. Coffin, 76 F.3d 494, 496 (2d Cir. 1996)

("[A] knowing and voluntary guilty plea waives all non-

jurisdictional defects in the prior proceedings."); Lebowitz v.

United States, 877 F.2d 207, 209 (2d Cir. 1989) (knowing and

voluntary guilty plea waives all non-jurisdictional defects in

prior proceedings).

> The point of these cases is that a counseled plea
> of guilty is an admission of factual guilt so reliable
> that, where voluntary and intelligent, it quite validly
> removes the issue of factual guilt from the case.  In
> most cases, factual guilt is a sufficient basis for the
> State's imposition of punishment.  A guilty plea,
> therefore, simply renders irrelevant those constitu-
> tional violations not logically inconsistent with the
> valid establishment of factual guilt and which do not
> stand in the way of conviction if factual guilt is
> validly established.  Menna v. New York, 423 U.S. 61,
> 62 n.2 (1975).

Lugo v. Artus, 05 Civ. 1998 (SAS), 2008 WL 312298 at *3 (S.D.N.Y.

Jan. 31, 2008).  Accordingly, a habeas petitioner who has pled

guilty to state criminal charges "'is not entitled to the vacat-

ing of his conviction on the basis of claimed antecedent consti-

tutional infirmities such as . . . violation of the privilege

against self-incrimination -- even assuming there is some factual

basis for these allegations.'"  Amparo v. Henderson, CV 86-4310

(RJD), 1989 WL 126831 at *1-*2 (E.D.N.Y. Oct. 18, 1989), quoting

Isaraphanich v. United States, 632 F. Supp. 1531, 1533 (S.D.N.Y.

1986).  Indeed, once there has been an admission of guilt, "[t]he

only proper focus of a federal habeas inquiry . . . is the

voluntary and intelligent character of the guilty plea."  Amparo
v. Henderson, supra, 1989 WL 126831 at *2, quoting Isaraphanich
v. United States, supra, 632 F. Supp. at 1533.

Furthermore, "in conducting habeas review, a federal
court is limited to deciding whether a conviction violated the
Constitution, laws or treaties of the United States." Estelle v.
McGuire, 502 U.S. 62, 68 (1991); see also Adams v. Greiner, 02
Civ. 6328 (GEL), 2004 WL 912085 at *2 (S.D.N.Y. Apr. 29, 2004)
("Habeas corpus is not an extension of the appeals process in the
state court.  Rather, it is a remedy for violations of a defen-
dant's rights under the federal constitution, and a very narrow
remedy at that.").  Violations or errors of state law or proce-
dure generally do not constitute grounds for habeas review.
Estelle v. McGuire, supra, 502 U.S. at 68, citing Lewis v.
Jeffers, 497 U.S. 764, 780 (1990) and Pulley v. Harris, 465 U.S.
37, 41, 104 S.Ct. 871, 874-75, 79 L.Ed.2d 29 (1984).

Finally, under Rule 2(c) of the Habeas Rules, a peti-
tioner must set forth all of his or her grounds for relief and
state the facts supporting each ground.  "In order to withstand a
motion to dismiss, a complaint [or a petition] must plead 'enough
facts to state a claim for relief that is plausible on its
face.'"  Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007)
(alteration added), quoting Bell Atlantic Corp. v. Twombly, 550
U.S. 544, 570 (2007).

24

In reviewing Flemming's pro se petition, the court "is obliged to construe his [petition] liberally," Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008), "and [to] interpret it to raise the strongest arguments that [it] suggests." Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138, 145-46 (2d Cir. 2002), quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)); accord Sharpe v. Conole, 386 F.3d 483, 484 (2d Cir. 2004).  Nevertheless, "when a [petitioner] is proceeding pro se, 'all normal rules of pleading are not absolutely suspended,'" Fletcher v. Goord, 07-cv-707 (GLS-GHL), 2008 WL 4426763 at *6 (N.D.N.Y. Sept. 25, 2008), quoting Stinson v. Sheriff's Dep't of Sullivan County, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980), and procedural requirements may not be excused lightly. Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980) ("[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."); accord McNeil v. United States, 508 U.S. 106, 113 (1993); Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) (per curiam) ("Procedural requirements . . . are not to be disregarded by courts out of a vague sympathy for particular litigants.").

2.  <u>Application</u>

　　a.  Claims Extinguished
　　　　<u>by Flemming's Plea</u>

　　　　Five of Flemming's claims fail because Flemming has not stated why they would "stand in the way of conviction if factual guilt [were] validly established." <u>Lugo v. Artus</u>, <u>supra</u>, 2008 WL 312298 at *3.  Flemming's claims of unlawful search and seizure, speedy trial violations, incomplete discovery disclosures, improper grand jury instructions, and violations of his privilege against self-incrimination are extinguished by Flemming's guilty plea because they have no relevance to the validity of Flemming's conviction, assuming the voluntariness of his guilty plea.  <u>Hayle v. United States</u>, 815 F.2d 879, 881 (2d Cir. 1987) (defendant may not raise non-jurisdictional challenges to indictment through federal habeas proceeding); <u>accord</u> <u>United States v. Garcia</u>, 339 F.3d 116, 117 (2d Cir. 2003); <u>United States v. Calderon</u>, 243 F.3d 587, 590 (2d Cir. 2001).  In addition, Flemming's claim of ineffective assistance of trial counsel fails to the extent that it is not alleging that trial counsel's behavior affected the voluntariness and intelligence of his plea.  <u>Silent v. Perlmann</u>, 07-CV-4524 (JFB), 2008 WL 5113418 at *8-*9 (E.D.N.Y. Nov. 25, 2008) (neither petitioner's claims concerning evidentiary and speedy trial issues nor his claim that counsel was ineffective for failing to raise those claims was cognizable after guilty

26

plea); <u>Ariola v. LaClair</u>, 07-CV-57 (GLS/VEB), 2008 WL 2157131 at
*10, *13, (N.D.N.Y. Feb. 20, 2008) (privilege against compulsory
self-incrimination and right to speedy trial are waived by
voluntary plea); <u>Mackey v. McGinnis</u>, 05 Civ. 4899 (DC), 2006 WL
2290829 at *13 (S.D.N.Y. Aug. 9, 2006) ("[A]ny potential defect
in a grand jury proceeding is cured by a subsequent convic-
tion."); <u>Isaraphanich v. United States</u>, <u>supra</u>, 632 F. Supp. at
1533 (petitioner's claims of unconstitutional search and seizure,
unlawful arrest, coerced confession, and violation of privilege
against self-incrimination were not cognizable after guilty
plea).[15]

####    b.  Claims that Fail to
Allege Necessary Facts

In addition, Flemming's claims concerning the Trial
Court's failure to conduct a competency hearing, the Trial
Court's failure to inform him of unspecified surcharges and

---

[15]Flemming's claims concerning the prosecution's instruc-
tions to the grand jury and disclosures to Flemming fail for the
additional reason that they raise only state law claims.  <u>Mackey
v. McGinnis</u>, <u>supra</u>, 2006 WL 2290829 at *13 (grand jury instruc-
tions); <u>Adams v. Greiner</u>, 02 Civ. 6328 (GEL), 2004 WL 912085 at
*7 (S.D.N.Y. Apr. 29, 2004) (discovery disclosures).  Further-
more, Flemming's claims concerning Fourth Amendment violations
fail for the additional reason that they are not cognizable in
habeas corpus proceedings where the petitioner has not alleged
that he lacked a full and fair opportunity to litigate the claims
in state court.  <u>Stone v. Powell</u>, 428 U.S. 465, 482 (1976).
Finally, defects in a state Grand Jury are generally not cogniza-
ble in a federal habeas corpus proceeding.  <u>United States v.
Mechanik</u>, 475 U.S. 66, 70 (1986).

conditions, the Appellate Division's failure to enlarge the

record on appeal, and the ineffective assistance of his appellate

counsel fail because Flemming has not alleged "enough facts to

state a claim . . . that is plausible on its face." Patane v.

Clark, supra, 508 F.3d at 111-12.

> i.   The Trial Court's
>      Failure to Conduct
>      a Competency Hearing

Flemming's claim concerning the Trial Court's failure

to order an examination of Flemming's mental health is not

cognizable because Flemming has not alleged facts necessary for a

plausible claim of a federal constitutional violation.

> If a defendant's mental capacity at the time of a plea
> is at issue, obvious concerns arise over whether the
> plea is voluntary and knowing.  The question is whether
> or not a judge should proceed, and "the test must be
> whether [the defendant had] sufficient present ability
> to consult with his lawyer with a reasonable degree of
> rational understanding [as well as having had] a fac-
> tual understanding of the proceedings against him."
> Dusky v. United States, 362 U.S. 402, 403 (1960);
> Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir.), cert.
> denied, 479 U.S. 805 (1986).

Carter v. Scully, 745 F. Supp. 854, 856 (E.D.N.Y. 1990); accord

Oyague v. Artuz, 393 F.3d 99, 106 (2d Cir. 2004); United States

v. Nichols, 56 F.3d 403, 412 (2d Cir. 1995).  "[O]nly when

evidence provides reasonable basis for believing that defendant

is incompetent should the court order further examination."

United States ex rel. Roth v. Zelker, 455 F.2d 1105, 1108 (2d

Cir. 1971); accord United States v. Zhou, 428 F.3d 361, 379 (2d Cir. 2005) ("A hearing to determine the mental competency of a criminal defendant 'is required only if the court has reasonable cause to believe that the defendant has a mental defect rendering him incompetent.'") (internal quotation marks omitted); United States v. Baez, 1 F. App'x 22, 23 (2d Cir. 2001) (same); United States v. Nichols, supra, 56 F.3d at 414 (same).

Flemming has not alleged any facts that would have given the trial court a reasonable basis for believing that he was incompetent.  He does not claim, expressly or implicitly, that he was not able to understand the proceedings or unable to communicate with his attorney with a reasonable degree of under-standing; he simply claims, without elaboration, that the trial court should have ordered a mental health examination.  In the absence of factual allegations suggesting the need for such a hearing, Flemming's bare bones allegation does not state a claim.[16]

---

[16]No facts suggesting the need for a competency examination are evident from the face of the hearing transcript.  Although Flemming may suffer from some psychological impairment, and Flemming's diction might occasionally seem odd, the transcript does give the impression that Flemming was unable to understand the proceedings or to communicate with counsel.  Castrillo v. Breslin, 01 Civ. 11284 (GBD)(GWG), 2005 WL 2792399 at *8 (S.D.N.Y. Oct. 26, 2005) (Report & Recommendation) ("A defen-dant's odd or even bizarre behavior will not trigger a trial court's duty to order a competency examination or hearing as long as it does not indicate that the defendant is unable to under-stand the proceedings or communicate with defense counsel."),
(continued...)

    ii. The Trial Court's
       Failure to Inform
       Flemming of Unspecified
       <u>Surcharges and Conditions</u>

   Flemming next claims that the Trial Court did not inform him, prior to his plea, that the sentence to be imposed included certain surcharges and certain additional conditions. Flemming does not identify the surcharges and conditions in issue. Flemming does not mention the Trial Court's failure to inform him of surcharges and conditions in any of his appellate briefs, and the record does not otherwise disclose any facts to explain the nature of Flemming's claim. Therefore, this claim also fails for vagueness and for failure to state the facts upon which it is grounded.

    iii. The Trial Court's
       Failure to Enlarge
       <u>the Appellate Record</u>

   Likewise, Flemming fails to state facts showing why his federal constitutional rights were implicated by the Appellate Division's refusal to permit him to enlarge the record on appeal

---

   [16](...continued)
citing <u>Kemp v. Conway</u>, 03 Civ. 5439 (JSR)(JCF), 2005 WL 107096 at *4 & n.9 (S.D.N.Y. Jan. 14, 2005) (Report & Recommendation), <u>and</u> <u>Galandreo v. Perlman</u>, 02-CV-6799 (JBW), 03-MISC-0066 (JBW), 2003 WL 23198790 at *19-*20 (E.D.N.Y. Oct. 31, 2003).

by adding a March 23, 2003 hearing transcript, and possibly other
materials, to that record.[17]

> [T]he only possible constitutional claim for habeas
> relief [p]etitioner could [be] assert[ing] in relation
> to the transcript is that his due process rights were
> violated when he was denied a fair appeal because of
> prejudice resulting from the missing transcript.  See
> Godfrey v. Irvin, 871 F. Supp. 577, 584 (W.D.N.Y.
> 1994); see also United States v. LaVallee, 428 F.2d
> 165, 167 (2d Cir. 1970) (where habeas petition is based
> on denial of a transcript, the question is "whether the
> transcript was an instrument needed to vindicate legal
> rights").

Shakur v. Spitzer, 04 Civ. 6134 (SHS)(THK), 2005 WL 2647941 at *3

(S.D.N.Y. Oct. 17, 2005); see also Bransford v. Brown, 806 F.2d

83, 86 (6th Cir. 1986) ("[I]n order to demonstrate denial of a

fair appeal, petitioner must show prejudice resulting from the

missing transcripts.").  Flemming does not explain the signifi-

cance of the transcript of the March 23, 2003 hearing, the claim

to which it related, or any other materials that he may have

wished to add to the record on appeal.  Neither the prosecution

nor Flemming's appellate counsel mentioned the hearing or any

motion to enlarge the record in their briefs to the Appellate

Division or in their letters respecting Flemming's request for

leave to appeal to the Court of Appeals.  Thus, it is impossible

---

[17]It is not clear from Flemming's petition whether he was
simply denied the right to include the March 23, 2003 transcript
in the record on appeal or whether he was also denied access to a
copy of the transcript due to the Appellate Division's denial of
his motion.  In addition, it is unclear whether Flemming is
seeking relief concerning any other requests to enlarge the
record on appeal.

to determine from the record before me whether the material that
Flemming sought to include in the record was necessary to vindi-
cate his legal rights, and whether he was prejudiced by the
Appellate Division's refusal to include such material.  As a
result, Flemming fails to state the facts that underlie these
grounds for relief.

                    iv.   The Ineffective
                          Assistance of
                          <u>Appellate Counsel</u>

        Furthermore, Flemming has failed to allege sufficient
facts to support his claim that he was denied the effective
assistance of appellate counsel.

        In order to prevail on an ineffective-assistance-of-
counsel claim, a habeas petitioner must meet the now-familiar,
two-part test set forth in <u>Strickland v. Washington</u>, 466 U.S.
668, 686-87 (1984).

>           The benchmark for judging any claim of ineffectiveness
>           must be whether counsel's conduct so undermined the
>           proper functioning of the adversarial process that the
>           trial cannot be relied on as having produced a just
>           result.
>
>                           *       *       *
>
>           A convicted defendant's claim that counsel's
>           assistance was so defective as to require reversal of a
>           conviction . . . has two components.  First, the defen-
>           dant must show that counsel's performance was defi-
>           cient.  This requires showing that counsel made errors
>           so serious that counsel was not functioning as "coun-
>           sel" guaranteed by the Sixth Amendment.  Second, the
>           defendant must show that the deficient performance

> prejudiced the defense.  This requires showing that
> counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is
> reliable.  Unless a defendant makes both showings, it
> cannot be said that the conviction . . . resulted from
> a breakdown in the adversary process that renders the
> result unreliable.

Accord Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005); Aeid v. Bennett, 296 F.3d 58, 62-63 (2d Cir. 2002); Hernandez v. United States, 202 F.3d 486, 488 (2d Cir. 2000); Guerrero v. United States, 186 F.3d 275, 281-82 (2d Cir. 1999); McKee v. United States, 167 F.3d 103, 106-07 (2d Cir. 1999); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).  This same standard applies to claims of ineffective assistance of appellate counsel. Mercer v. Herbert, 133 F. Supp.2d 219, 238 (W.D.N.Y. 2001) ("A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel.").  See also Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Hernandez v. Edwards, 98 Civ. 6704 (MBM), 2001 WL 575594 at *4 (S.D.N.Y. May 29, 2001).

In determining whether counsel's performance was objectively deficient, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, supra, 466 U.S. at 689 (internal quotation marks omitted).

33

In the appellate context, "it does not suffice 'for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument.'"  McKee v. United States, supra, 167 F.3d at 106, quoting Mayo v. Henderson, supra, 13 F.3d at 533.  "Rather, it is the hallmark of effective appellate advocacy to choose wisely which claims are brought on appeal."  Fletcher v. Mann, 956 F. Supp. 168, 173 (N.D.N.Y. 1997), aff'd mem., 165 F.3d 13 (2d Cir. 1998) (internal quotation marks omitted).  Thus,

> [i]n assessing the reasonableness of the arguments posed on appeal versus other possible nonfrivolous arguments, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. . . . Generally, only when ignored issues "are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."

Larrabee v. Smith, 14 F. Supp.2d 235, 239 (N.D.N.Y. 1998), quoting Mayo v. Henderson, supra, 13 F.3d at 533; see Torres v. Irvin, supra, 33 F. Supp.2d at 266.

Because the test is conjunctive, a habeas petitioner's failure to satisfy either prong requires that the challenge to the conviction be rejected.  Strickland v. Washington, supra, 466 U.S. at 697.

Flemming's sole factual allegation concerning appellate counsel's ineffectiveness is that counsel failed to raise arguments that Flemming raised in his supplemental briefs.  Perhaps such a bare bones allegation might be sufficient if it were

34

evident that petitioner raised an important issue that appellate
counsel overlooked.  However, that was not the case here.
Furthermore, given the fact that all the arguments in Flemming's
supplemental briefs proved to be meritless, Flemming cannot
satisfy the prejudice prong of the Strickland test.

 Factual allegations this thin are insufficient to
support a plausible ineffective-assistance claim.  See Hill v.
Lockhart, 474 U.S. 52, 60 (1985) (petitioner's allegation that
counsel gave erroneous advice as to petitioner's eligibility for
parole under plea bargain was insufficient to support claim of
ineffective assistance because petitioner alleged no facts that
would suggest prejudice, such as significant effect of counsel's
advice on petitioner's decision to plead guilty); Minor v.
Henderson, 754 F. Supp. 1010, 1022 (S.D.N.Y. 1991) (rejecting
petitioner's claim that his counsel was ineffective for "not
hav[ing] protected his client's speedy trial rights (tried 14
months after arrest), g[iving] a brief, discursive summation,
fail[ing] to properly cross examine the officer on his defective
identification procedures, etc." for failure to state sufficient
supporting facts to comply with Habeas Rule 2(c)); Harris v.
Attorney Gen. of New York, 81 Civ. 7083 (CSH), 1984 WL 661 at *1
n.1 (S.D.N.Y. July 25, 1984) (declining to consider petitioner's
ineffective assistance claim, expressed as "[s]ince I am con-
victed of circumstantial evidence my lawyer did not move to seek

a lesser charge," because petitioner stated no facts in support

of the claim, in violation of Habeas Rule 2(c)).[18]

      B.  The Merits
          of Flemming's
          <u>Remaining Claims</u>

      Flemming further argues that (1) his plea was involun-

tary; (2) his plea was unintelligent and defective because (a)

his allocution did not "spell out the crime" and (b) he was not

informed of the crimes with which he was charged as well as the

elements of those crimes; (3) his trial counsel was ineffective

because counsel coerced him and did not inform him of the

charges; (4) the charge to which he pled guilty was dismissed

along with indictment 1337/02; (5) the evidence was insufficient

to convict him; (6) it was improper for the Trial Court to reject

his motion to withdraw his plea, without any factfinding; and (7)

the Trial Court imposed an unconstitutional sentence by enhancing

the sentence with a prior conviction that did not qualify as a

predicate felony and by conducting the predicate felony hearing

after Flemming pled guilty.  Respondents concede that these

remaining claims were fully exhausted (Resp'ts' Br. 19-22, 38-39,

---

[18]Because the claim fails on the merits, it is unnecessary
to address respondents' alternative argument that Flemming's
ineffective assistance of appellate counsel claim was not ex-
hausted and should be deemed procedurally barred because Flemming
failed to request leave to appeal from the Appellate Division's
denial of his petition for a writ of error coram nobis (Resp'ts'
Br. 32).

45-46).  However, respondents argue that these claims fail on the merits.

1.   Standard of Review

A habeas petitioner must meet a stringent standard before a federal court can issue the writ.  Specifically, habeas relief may be granted only when the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly estab-lished Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unrea-sonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has explained these alternative standards:

> First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the govern-ing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  See also Early v. Packer, 537 U.S. 3, 7-8 (2002) (per curiam). . . .

> Second, [petitioner] can satisfy § 2254(d) if he can demonstrate that the [State] Court's decision involved an "unreasonable application" of clearly established law.  As we have explained:

>> "[A] federal habeas court may not issue the writ simply because that court concludes in its inde-pendent judgment that the state-court decision applied [a Supreme Court case] incorrectly.  See

37

> <u>Bell v. Cone</u>, 535 U.S. 685, 698-699 (2002); <u>Williams</u>, <u>supra</u>, at 411.  Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."

<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002) (<u>per curiam</u>).

<u>Price v. Vincent</u>, 538 U.S. 634, 640-41 (2003); <u>accord</u> <u>Waddington v. Sarausad</u>, 555 U.S. ---, ---, 129 S.Ct. 823, 831 (2009); <u>Brown v. Payton</u>, 544 U.S. 133, 139-40 (2005); <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-72 (2003); <u>Hoi Man Yung v. Walker</u>, 468 F.3d 169, 176 (2d Cir. 2006); <u>Hawkins v. Costello</u>, 460 F.3d 238, 242-43 (2d Cir. 2006); <u>Brown v. Artuz</u>, 283 F.3d 492, 500-01 (2d Cir. 2002).

In addition to the definition of "unreasonable application" set forth above, a state court may unreasonably apply Supreme Court precedent "if the state court unreasonably extends a legal rule established by the Supreme Court or if it unreasonably fails to extend a legal rule to a context in which the rule reasonably should apply." <u>Serrano v. Fischer</u>, 412 F.3d 292, 296-97 (2d Cir. 2005).  "Unreasonableness is determined by an 'objective' standard." <u>Gersten v. Senkowski</u>, 426 F.3d 588, 607 (2d Cir. 2005), <u>quoting</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 409 (2000); <u>Hawkins v. Costello</u>, 460 F.3d 238, 242-43 (2d Cir. 2006).

Both the "contrary to" and "unreasonable application" clauses "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." <u>Williams v. Taylor</u>, <u>supra</u>, 529

38

U.S. at 412.  "[C]learly established [f]ederal law . . . refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (internal quotations omitted).  "That federal law, as defined by the Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002); Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008).  "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d 104, 110 (2d Cir. 2003); accord DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002).

A ruling that is clearly erroneous is not necessarily a ruling that constitutes an unreasonable application of federal law. Lockyer v. Andrade, supra, 538 U.S. at 75 (The "objectively unreasonable" and "clearly erroneous" standards "are not the same.  The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Davis v. Grant, supra, 532 F.3d at 140; Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003).  However, "'the increment [of error beyond clear error] need not be great; otherwise, habeas relief would be limited to state court deci-

sions so far off the mark as to suggest judicial incompetence.'" Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009), quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

A habeas petitioner must also satisfy a high standard to challenge successfully a state court's factual ruling:

> [U]nder AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041 (2003).

Tolentino v. Brown, 05 Civ. 9002 (GBD)(THK), 2009 WL 1347699 at *7 (S.D.N.Y. May 5, 2009); accord Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007) ("[The] AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); Drake v. Portuondo, 553 F.3d 230, 239 (2d Cir. 2009); Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006); Mask v. McGinnis, 233 F.3d 132, 139 (2d Cir. 2000); Nightengale v. Conway, 05 Civ. 1994 (GBD)(THK), 2009 WL 995178 at *8 (S.D.N.Y. Apr. 13, 2009); see also Rosa v. McCray, 396 F.3d 210, 220 (2d Cir. 2005). "The clear and convincing evidence standard is somewhere between the preponderance of the evidence standard

40

and the proof beyond a reasonable doubt standard."  <u>Bastien v.</u>
<u>William</u>, 03 Civ. 5749 (DLC), 2004 WL 2978283 at *4 (S.D.N.Y. Dec.
20, 2004), <u>citing</u> <u>Addington v. Texas</u>, 441 U.S. 418, 431 (1979).
"The Second Circuit has interpreted this standard to require that
the evidence support a conclusion with a 'high degree of cer-
tainty.'"  <u>Bastien v. William</u>, <u>supra</u>, 2004 WL 2978283 at *4,
<u>quoting</u> <u>United States v. Chimurenga</u>, 760 F.2d 400, 405 (2d Cir.
1985).

       To be entitled to the deferential standard of review
under either sub-paragraph of subsection 2254(d), the state
courts must have resolved the petitioner's claims "on the mer-
its."  <u>Cotto v. Herbert</u>, <u>supra</u>, 331 F.3d at 230; <u>see</u> <u>also</u> <u>Ryan v.</u>
<u>Miller</u>, 303 F.3d 231, 245 (2d Cir. 2002) ("[I]n order for this
deferential standard of § 2254 to apply, we must first determine
that the state court considered [petitioner's claim] on its
merits."); <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 309-10 (2d Cir.
2001).

       The Second Circuit has instructed habeas courts to
"classify" a state court decision as either:  (1) "fairly appear-
ing to rest primarily on federal law or to be interwoven with
federal law"; or (2) "fairly appearing to rest primarily on state
procedural law."  <u>Jimenez v. Walker</u>, 458 F.3d 130, 145 (2d Cir.
2006).  "If the state court's decision falls into the first
category, and does not 'contain a clear statement of reliance on

a state procedural bar,' the decision must be treated as having been made on the merits." <u>Mateo v. Fishkill Corr. Facility</u>, 04 Civ. 3420 (DGT), 2007 WL 2362205 at *5 (E.D.N.Y. Aug. 14, 2007), <u>quoting</u> <u>Jimenez v. Walker</u>, <u>supra</u>, 458 F.3d at 138.  To make this classification, habeas courts in this circuit examine "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." <u>Jimenez v. Walker</u>, <u>supra</u>, 458 F.3d at 145 n.16.

Here, upon examining these three factors, I conclude that the Appellate Division adjudicated the merits of petitioner's claims.  First, with respect to plaintiff's challenge to the voluntariness of his plea, the Appellate Division's analysis appears to have been purely substantive because it directly addressed petitioner's factual and legal arguments for why his plea was involuntary and did not note any procedural obstacles to its consideration of those arguments. <u>People v. Flemming</u>, <u>supra</u>, 27 A.D.3d at 258, 811 N.Y.S.2d at 36.  Furthermore, the Appellate Division suggested that it was interpreting federal law concerning the voluntariness of Flemming's plea by citing two New York Court of Appeals cases that discussed numerous federal precedents on that issue. <u>People v. Flemming</u>, <u>supra</u>, 27 A.D.3d at 258, 811 N.Y.S.2d at 36, <u>citing</u> <u>People v. Fiumefreddo</u>, 82 N.Y.2d 536, 544-45, 626 N.E.2d 646, 650, 605 N.Y.S.2d 671, 675 (1993) <u>and</u> <u>People</u>

v. Frederick, 45 N.Y.2d 520, 525-27, 382 N.E.2d 1332, 1335-36, 410 N.Y.S.2d 555, 558-60 (1978).

Second, with respect to plaintiff's sentencing claim, the Appellate Division broadly rejected plaintiff's challenge to his sentence by stating that it "perceived no basis for reducing the sentence." People v. Flemming, supra, 27 A.D.3d at 258, 811 N.Y.S.2d at 36. Again, this absence of any language suggesting a disposition on procedural grounds implies that petitioner's sentencing claim was denied for substantive reasons.

Finally, the Appellate Division rejected all of the other claims in plaintiff's supplemental brief, stating that it had "reviewed the arguments in [Flemming's] pro se supplemental brief and f[ou]nd them unavailing." People v. Flemming, supra, 27 A.D.3d at 258, 811 N.Y.S.2d at 36. Under Supreme Court and Second Circuit precedent, this sweeping adjudication necessarily reached the merits of all of plaintiff's remaining purported federal claims. See Early v. Packer, 537 U.S. 3, 8 (2002) (applying deferential AEDPA standard to state appellate court decision which stated that state trial court "did not . . . deny [petitioner] any constitutional rights," but did not cite to federal caselaw); Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006) (Appellate Division adjudicated merits by summarily reject- ing petitioner's state coram nobis petition without comment and without mention of petitioner's federal claim); Wade v. Herbert,

391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division adjudicated
merits where it held that "[t]he [petitioner's] remaining conten-
tions are without merit," but did not cite federal caselaw);
Sellan v. Kuhlman, supra, 261 F.3d at 308, 311, 314 (Appellate
Division adjudicated merits where it stated that "Upon the papers
filed . . . it is ORDERED that the motion is denied"; "Nothing in
the phrase 'adjudicated on the merits' requires the state court
to have explained its reasoning process.").

    2.  <u>Application</u>

        a.  The Voluntariness
           <u>of Flemming's Plea</u>

      Flemming first claims that his plea was involuntarily
"coerc[ed] [and] induce[d], [as a result of his being]
misinform[ed] by [his trial] attorney and [the prosecutor]" (Pet.
7; Dec. Ord. ¶ 35).  I liberally construe Flemming's allegation
of being "misinformed" to refer to his allegation on appeal that
he was induced to plead guilty because his trial counsel informed
him that his wife would be prosecuted if he did not plead guilty.

      "The Fifth Amendment privilege against compulsory
self-incrimination . . . requires that the entry of a guilty plea
'represent[] a voluntary and intelligent choice among the alter-
native courses of action open to the defendant.'"  <u>Babi v.
LaClair</u>, 06 Civ. 14204 (CM)(MHD), 2009 WL 1181615 at *11

(S.D.N.Y. Apr. 30, 2009), quoting Ventura v. Meachum, 957 F.2d
1048, 1058 (2d Cir. 1992); accord Parke v. Raley, 506 U.S. 20,
28-29 (1992); North Carolina v. Alford, 400 U.S. 25, 31 (1970).
To be voluntary, a plea may not be the result of "actual or
threatened physical harm, mental coercion overbearing the defen-
dant's will, or the defendant's sheer inability to weigh his
options rationally."  Miller v. Angliker, 848 F.2d 1312, 1320 (2d
Cir. 1988), citing Brady v. United States, 397 U.S. 742, 750
(1970).  "Thus, a plea may not be induced by 'threats (or prom-
ises to discontinue improper harassment), misrepresentation
(including unfulfilled or unfulfillable promises), or perhaps by
promises that are by their nature improper as having no proper
relationship to the prosecutor's business.'"  Babi v. LaClair,
supra, 2009 WL 1181615 at *11, quoting United States v. Doe, 537
F.3d 204, 211 (2d Cir. 2008) and citing Brady v. United States,
supra, 397 U.S. at 744; see also Machibroda v. United States, 368
U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or
threats which deprive it of the character of a voluntary act, is
void.").

          The Supreme Court has not resolved the issue of whether
"the prosecutor may use a promise or threat to a third party as a
way of influencing the defendant's guilty plea," though "several
circuits have found such bargaining to be lawful."  Allyn v.
Comm'r of Corr. Servs., 708 F. Supp. 592, 593 (S.D.N.Y. 1989),

citing <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 364 n.8 (1978).
"[S]uch a threat would only be one of many factors in the deter-
mination of whether a plea is voluntary." <u>United States v.
Marquez</u>, 909 F.2d 738, 1997 WL 85850 at *1 (2d Cir. 1997) (unpub-
lished opinion), <u>citing</u> <u>United States v. Marquez</u>, 909 F.2d 738,
742 (2d Cir. 1990).

        Here, the Appellate Division determined that the Trial
Court "properly rejected" Flemming's assertion that the prosecu-
tion "induced his plea by means of alleged threats or promises
concerning the possible prosecution of his wife" "based upon the
extensive information before it, including submissions by
[Flemming], defense counsel and the prosecutor, as well as the
detailed plea allocution . . . ." <u>People v. Flemming</u>, <u>supra</u>, 27
A.D.2d at 258, 811 N.Y.S.2d at 36.  This determination was not
contrary to, nor did it involve an unreasonable application of,
clearly established federal law, and the Trial Court's underlying
findings of fact were not rebutted with clear and convincing
evidence.

        Flemming has not offered any specific evidence to rebut
the Trial Court's finding of voluntariness, and the Trial Court
had ample reason to reject Flemming's allegations concerning his
wife's threatened prosecution "based upon the extensive informa-
tion before it." <u>People v. Flemming</u>, <u>supra</u>, 27 A.D.2d at 258,
811 N.Y.S.2d at 36.  First, both Flemming himself and the prose-

cution denied under oath that any such threat occurred.  Flemming

twice confirmed that no one -- expressly including his attorney -

- had promised him anything or forced him in any way to plead

guilty (P. 19, 39).  Likewise, the prosecution flatly denied any

such threat or promise in an affirmation made under penalty of

perjury (Affirmation of Diana Florence, Esq., dated Sept. 12,

2003, annexed as Ex. D to Danzig Decl., ¶ 9).

        Furthermore, even if the prosecution had offered not to

prosecute Flemming's wife as an incentive to plead guilty, and

his trial counsel had communicated that offer to Flemming or even

advised Flemming to take the offer on that basis, Flemming's

allocution definitively established that he was still pleading

guilty of his own free will.  "Solemn declarations in open court

carry a strong presumption of verity," Blackledge v. Allison, 431

U.S. 63, 74 (1977), and such statements "are generally treated as

conclusive in the face of the defendant's later attempt to

contradict them." Adames v. United States, 171 F.3d 728, 732 (2d

Cir. 1999), citing United States v. Gonzalez, 970 F.2d 1095, 1101

(2d Cir. 1992); see also United States v. Bambulas, 571 F.2d 525,

526 (10th Cir. 1978) (statements at plea allocution are conclu-

sive absent credible reason "justifying departure from their

apparent truth").  Flemming solemnly declared under oath -- four

times -- that he was pleading guilty voluntarily.  In addition,

Flemming affirmatively stated, "I'm going to take the plea of my

own free will" (P. 19-20), and he twice confirmed that everything that he had said under oath was true (P. 39).

Finally, the fact that a defendant pleads guilty in order to eliminate his exposure to a harsher sentence after trial does not render the plea involuntary.  North Carolina v. Alford, 400 U.S. 25, 31 (1970).  There is no reason why the same rule should not apply to a plea taken to eliminate a spouse's criminal exposure.

Accordingly, the state courts' finding that Flemming's allocution evinced voluntariness was clearly established by the record and Flemming offers no evidence sufficient to overturn that finding.  See Rosenberger v. United States, 133 F. App'x 799, 801 (2d Cir. 2005) (Defendant "has set forth no evidence, other than his self-serving, conclusory allegations, that he was coerced into pleading guilty.  Moreover, the plea allocution indicates that [defendant's] guilty plea . . . was knowing and voluntary."); Urena v. New York, 160 F. Supp.2d 606, 611 (S.D.N.Y. 2001) (Petitioner "stated on the record that he knew that he was giving up the right to trial and the safeguards that accompany that right, that he was not threatened or forced to plead guilty, and that he sold . . . cocaine . . .  These statements undermine[d] petitioner's claim that his plea was involuntary . . . .").

48

b.   The Intelligence
of Flemming's Plea

Flemming next claims that he did not "spell out" the crime to which he pled guilty and he was not informed of the elements of the crimes with which he was charged, which would adversely affect the intelligent nature of his plea.[19]  Respondents reply that Flemming's allegations are contradicted by the record (Resp'ts' Br. 20-21).[20]  "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"  Bousley v. United States, 523 U.S. 614, 618 (1998), quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941).

---

[19]Flemming articulates this argument as follows:  "Defendant was not inform of his charges by lawyer, ADA nor judge, abuse of power [sic]"; "Defendant was not inform of elements of crime charge nor [illegible] before taking his plea in trial [sic]"; and "[T]he defendant plea did not spell out crime June 4, 2008 plea [sic]" (Pet. 6, 7; Dec. Ord. ¶¶ 23, 27, 37).

[20]Although Flemming did not raise these claims on direct appeal, respondents address the claims on the merits (see Resp'ts' Br. 19-22).  Because the claims are so patently devoid of merit, I conclude that the course that best serves the interests of justice is to address the substance of the claims and to deny them on the merits.  See 28 U.S.C. § 2254(b)(2) (permitting federal courts to deny unexhausted habeas claims on the merits); Rhines v. Weber, 544 U.S. 269, 277-78 (2005) ("[T]he district court would abuse its discretion if it were to grant [a habeas petitioner] a stay when his unexhausted claims are plainly meritless.");  Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (exercising discretion to deny petitioner's ineffective assistance of counsel claim on merits, rather than remand, in interest of judicial economy).

"[A] plea is deemed 'intelligent' if the accused had
the advice of counsel and understood the consequences of his
plea, even if only in a fairly rudimentary way." <u>Miller v.
Angliker</u>, <u>supra</u>, 848 F.2d at 1320; <u>see also</u> <u>Brady v. United
States</u>, <u>supra</u>, 397 U.S. at 748 & n.6 ("The importance of assuring
that a defendant does not plead guilty except with a full under-
standing of the charges against him and the possible consequences
of his plea was at the heart of our recent decisions" in <u>McCarthy
v. United States</u>, 394 U.S. 459 (1969) and <u>Boykin v. Alabama</u>, 395
U.S. 238 (1969)).

Here, Flemming has offered no substantial evidence
apart from his own allegations to rebut the Trial Court's finding
that he understood the nature of his plea.  For that reason
alone, his argument does not meet the clear-and-convincing-
evidence standard.

Moreover, the transcript of the plea proceedings
demonstrates that Flemming understood the nature of the charge
against him.  He consulted with counsel throughout the plea
proceeding as well as during "much negotiation over a period of
fourteen months" before that proceeding (P. 17).  Furthermore,
Flemming twice admitted under oath that he, working with others,
stole in excess of $50,000.00 from the Red Cross in the County of
New York between October 1, 2001 and March 1, 2002, which facts
are sufficient to establish guilt of grand larceny in the second

50

degree, notwithstanding Flemming's arguments to the contrary (P. 26, 31-33).[21]  Although Flemming may not have been aware of the precise elements of the crime and he may not have "spell[ed] out" those precise elements, he was aware that he was pleading guilty to the specific crime of grand larceny in the second degree, and that he was admitting to facts that the Trial Court deemed important in determining whether he was, in fact, guilty of that crime.  Finally, petitioner was charged with an extremely simple crime -- theft of property.  Society's prohibition against stealing is not an abstruse or counter-intuitive legal construct; the prohibition is common to virtually all religions and is easily grasped by pre-schoolers.  In the absence of a documented mental disease or defect, petitioner's claim that he did not understand the charges against him borders on the fanciful.

Thus, it is clear from the record that Flemming under-stood the nature of the charges against him sufficiently to comport with Due Process.  See Panuccio v. Kelly, 927 F.2d 106, 110 (2d Cir. 1991) ("The trial court could . . . appropriately assume that [petitioner] understood the charges against him since he was represented by counsel who had presumably explained the charges to him . . . [and] [t]here was, in short, nothing about

---

[21]New York law defines the crime of grand larceny in the second degree as, among other things, "steal[ing] property . . . when . . . [t]he value of the property exceeds fifty thousand dollars."  N.Y. Penal Law § 155.40.

the allocution that undermined the reliability of the plea as an indicator of factual guilt."); cf. United States v. Bonilla, 17 F. App'x 11, 13 (2d Cir. 2000) ("This Circuit has consistently affirmed denials of motions to withdraw guilty pleas when the defendant's allegations are 'directly contradicted by his clear statements at allocution' that contained sufficient factual detail about the offense.").[22]

        c.  The Ineffective
            Assistance of
            Trial Counsel

        In addition, because Flemming's testimony demonstrates that his guilty plea was voluntary and intelligent, he was not prejudiced by his trial counsel's allegedly coercive behavior or his alleged failure to inform petitioner of the charges against him.

        A petitioner claiming ineffective assistance in connection with a conviction after a guilty plea "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); accord Davis v. Greiner, 428 F.3d 81, 87 (2d Cir. 2005). Flemming alleges that he was prejudiced by counsel's conduct because his decision

_____

[22]To the extent that Flemming is claiming that his trial counsel was ineffective, has not rebutted the Trial Court's factual finding that his plea was voluntary and intelligent.

to plead guilty was allegedly the product of his trial counsel's coercion and failure to inform him of his charges.  Because Flemming has not offered any evidence to rebut the Trial Court's finding that his plea was not coerced and in light of my finding that he understood the nature of the charges against him sufficiently to comport with Due Process, Flemming has also failed to establish that he was prejudiced by any of his trial counsel's behavior.  Therefore, the Appellate Division's rejection of that claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law.  See Fashewe v. United States, 99 CV 6857 (SJ), 2005 WL 2645002 at *4 (E.D.N.Y. Sept. 19, 2005) ("Petitioner cannot demonstrate the requisite prejudice under Strickland's second prong because the Second Circuit Court of Appeals has already determined that Petitioner's guilty plea was knowing and voluntary."); see also Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (The right to the effective assistance of counsel "is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated."), quoting United States v. Cronic, 466 U.S. 648, 658 (1984).[23]

---

[23]Furthermore, Flemming's trial counsel's behavior was not deficient because he secured a sentence for Flemming that was far
(continued...)

d.   The Dismissal of
     <u>Flemming's Indictment</u>

Flemming next claims that indictment 1337/02 was
dismissed, and that it was therefore improper for him to be asked
to plead guilty to a charge in that indictment.  Flemming has
not, however, offered any evidence other than his own statement
to support the factual contention that the indictment was dis-
missed, and his testimony on this subject is incoherent.[24]  The
Appellate Division rejected Flemming's claim.  On the day of his
guilty plea, Flemming was about to be tried on the charges in
consolidated indictment 1337/02, and the Trial Court, the prose-

---

[23](...continued)
more favorable than that which Flemming would have faced had he
been convicted at trial.  <u>See</u> <u>Feliz v. United States</u>, 01 Civ.
5544 (JFK), 00 Cr. 53 (JFK), 2002 WL 1964347 at *7 (S.D.N.Y. Aug.
22, 2002) ("No prejudice exists when a plea agreement lessens the
severity of the sentence the defendant would face if convicted at
trial."); <u>accord</u> <u>Ariola v. LaClair</u>, <u>supra</u>, 2008 WL 2157131 at
*15; <u>Scott v. Sup't, Mid-Orange Corr. Fac.</u>, 03-CV-6383 (RJD),
2006 WL 3095760 at *9 (E.D.N.Y. Oct. 31, 2006); <u>Moran v. United
States</u>, 96 Civ. 3657, 1998 WL 54616 at *5 (S.D.N.Y. Feb. 10,
1998).

[24]Flemming submitted a declaration to this Court on June 4,
2008, approximately 16 months after he filed his amended peti-
tion, stating that indictment 1337/02 was dismissed on August 28,
2002, by the Justice in Part 31 of the Supreme Court.  However,
Flemming concedes that the Justice in Part 31 of the Supreme
Court nevertheless consolidated indictment 1792/02 with indict-
ment 1337/02 on September 10, 2002 (Declaration of Woodrow
Flemming, dated June 1, 2008, ¶¶ 16-17).  Therefore, Flemming has
not offered a coherent version of events that supports his
argument that the charge of grand larceny in the second degree
was not pending against him when he pled guilty to that charge.

cutor, and Flemming's attorney all evidently understood that all of Flemming's charges were in fact consolidated in that indictment, and that that indictment had not been dismissed.  The Trial Court specifically stated on the record that the charges in indictment 1792/02 had been consolidated with the charges in indictment 1337/02; the Trial Court then dismissed indictment 1792/02 because the charges were duplicative of the charges in the consolidated indictment (P. 48).  Flemming's trial counsel made no objection concerning the allegedly dismissed indictment, and Flemming's appellate counsel conceded that all of the charges in indictments 1337/02 and 1792/02 had been consolidated for trial (Brief for Defendant Appellant, dated June 2005, annexed as Ex. L to Danzig Decl., 4).  Because Flemming has not offered any evidence that supports his contention that the charge of grand larceny in the second degree was dismissed, the Appellate Division did not unreasonably apply clearly established federal law in rejecting the claim.

e.  The Sufficiency
of the Evidence

Flemming further argues that the evidence was insufficient to convict him.  The Appellate Division found that argument "unavailing."  People v. Flemming, supra, 27 A.D.3d at 258, 811 N.Y.S.2d at 36.

In reviewing a claim that evidence was legally insuffi-
cient,

> the relevant question is whether, after viewing the
> evidence in the light most favorable to the prosecu-
> tion, any rational trier of fact could have found the
> essential elements of the crime beyond a reasonable
> doubt.  This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve
> conflicts in the testimony, to weigh the evidence, and
> to draw reasonable inferences from basic facts to
> ultimate facts.

Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)(citations and

original emphasis omitted); Policano v. Herbert, 507 F.3d 111,

116 (2d Cir. 2007)("[A] petitioner bears a very heavy burden in

convincing a federal habeas court to grant a petition on the

grounds of insufficiency of the evidence." (internal quotation

marks omitted)); Fama v. Comm'r of Corr. Servs., 235 F.3d 804,

811 (2d Cir. 2000) (same); Davis v. Greene, 04 Civ. 6132 (SAS),

2008 WL 216912 at *6 (S.D.N.Y. Jan. 22, 2008) (same).

Because Flemming allocuted that he stole property with

a value in excess of $50,000.00, and he knew that neither he nor

the individuals to whom he furnished false documents were enti-

tled to the property, Flemming's own statements establish all the

elements of grand larceny in the second degree.  Therefore, the

Appellate Division's rejection of his sufficiency challenge was

not contrary to, nor did it involve an unreasonable application

of, clearly established federal law.

f.   The Trial Court's
     Denial of Flemming's
     Motion to Withdraw His
     <u>Plea Without Factfinding</u>

Flemming's sixth claim is that the Trial Court improperly "denied [his] motion to withdraw [his] plea at sentenc[i]ng without fact[-]finding" (Pet. 4; Dec. Ord. ¶ 2).  The Appellate Division rejected that claim, finding that "[t]he court properly exercised its discretion in denying defendant's motion to withdraw his plea" under New York's Criminal Procedure Law.  <u>People v. Flemming</u>, <u>supra</u>, 27 A.D.3d at 258, 811 N.Y.S.2d at 35-36, <u>citing</u> <u>People v. Fiumefreddo</u>, 82 N.Y.2d 536, 626 N.E.2d 646, 605 N.Y.S.2d 671 (1993) <u>and</u> <u>People v. Frederick</u>, 45 N.Y.2d 520, 382 N.E.2d 1332, 410 N.Y.S.2d 555 (1978).  The Appellate Division also determined that the Trial Court properly rejected Flemming's asserted basis for withdrawing his plea -- his allegation that the plea had been coerced -- "based upon the extensive information before it, including submissions by defendant, defense counsel and the prosecutor, as well as the detailed plea allocution and the court's familiarity with the case."  <u>People v. Flemming</u>, <u>supra</u>, 27 A.D.3d at 258, 811 N.Y.S.2d at 36.

"The proper analytical approach" for assessing whether state criminal procedural rules comport with due process is to determine if they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as

57

fundamental." <u>Medina v. California</u>, 505 U.S. 437, 443, 445

(1992), <u>quoting</u> <u>Patterson v. New York</u>, 432 U.S. 197, 202 (1977).

In the field of criminal law, the Supreme Court "'ha[s] defined

the category of infractions that violate "fundamental fairness"

very narrowly' based on the recognition that, '[b]eyond the

specific guarantees enumerated in the Bill of Rights, the Due

Process Clause has limited operation.'"  <u>Medina v. California</u>,

<u>supra</u>, 505 U.S. at 443, <u>quoting</u> <u>Dowling v. United States</u>, 493

U.S. 342, 352 (1990).

> Both federal and state precedent have established
> that a defendant is not entitled as a matter of right
> to an evidentiary hearing on a motion to withdraw a guilty
> plea.  <u>See</u>, <u>e.g.</u>, <u>United States v. Avellino</u>, 136
> F.3d 249, 260-61 (2d Cir. 1998); <u>United States v.
> Maher</u>, 108 F.3d 1513, 1529-30 (2d Cir. 1997); <u>United
> States v. Williams</u>, 23 F.3d 629, 635 (2d Cir. 1994);
> <u>United States v. Gonzalez</u>, 970 F.2d 1095, 1100 (2d Cir.
> 1992); <u>People v. Fiumefreddo</u>, 82 N.Y.2d 536, 605
> N.Y.S.2d 671, 649-50, 626 N.E.2d 646, 674-75 (1993);
> <u>People v. Frederick</u>, 45 N.Y.2d 520, 410 N.Y.S.2d 555,
> 382 N.E.2d 1332, 1334 (1978).  In light of these prece-
> dents, the failure to hold an evidentiary hearing on a
> motion to withdraw a plea does not offend a deeply
> rooted or "fundamental" principle of justice.  Thus,
> under AEDPA's deferential standard and the Supreme
> Court's decision in <u>Medina [v. California</u>, <u>supra</u>], the
> Appellate Division's conclusion that the state court
> had conducted a "thorough inquiry, . . . [and] properly
> denied defendant's motion to withdraw his guilty plea
> [where] [t]he record establishes that defendant made a
> voluntary plea and fails to substantiate his claims of
> coercion and innocence," . . . was not an unreasonable
> application of clearly established Federal law.

<u>Hines v. Miller</u>, 318 F.3d 157, 162 (2d Cir. 2003) (second ellip-

sis added).

Here, as in <u>Hines</u>, the Appellate Division's determination that the Trial Court properly exercised its discretion to deny Flemming's motion to withdraw his plea without additional factfinding or hearings was not contrary to, nor did it involve an unreasonable application of, clearly established federal law because the record establishes that Flemming made a voluntary plea and failed to substantiate his claims.  Furthermore, Flemming does not explain what evidence he would have offered at a hearing that he and his newly appointed attorney had not already submitted to the Trial Court.  Therefore, it is not clear how he was prejudiced by the lack of further "factfinding."

g.   The Enhancement of
Flemming's Sentence

Flemming's final argument is that the Trial Court imposed an unconstitutional sentence by enhancing his sentence with a prior conviction that did not qualify as a predicate felony and by conducting the predicate felony hearing after Flemming pled guilty (Pet. 8, 11; Dec. Ord. ¶¶ 38-40, 58).

The nature of petitioner's claim concerning his sentence is not clear.  If petitioner is arguing that his prior felonies do not qualify as predicate felonies under New York State law, he is raising a question of state law that is not cognizable in a federal habeas corpus proceeding.  28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, <u>supra</u>, 502 U.S. at 67-68 ("In

conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Howard v. Walker, 406 F.3d 114, 121 (2d Cir. 2005) (noting that a claim that a conviction was obtained in violation of state law is not cognizable in federal court).  This Court cannot re-examine a New York State Court's interpretation of New York State law.

Similarly, to the extent petitioner's claim can be read to assert that there is some defect in the timing of the Trial Court's holding of the predicate felony hearing, it fails because there is no provision in the United States Constitution or other federal law requiring that states conduct predicate felony hearings at some particular point in time before sentencing. Thus, there is no federal right that could have been violated by the timing of the hearing.

If Flemming is claiming his sentence is unconstitutional because it was beyond the limits set by state law, see United States ex rel. Marcial v. Fay, 267 F.2d 507, 509-10 (2d Cir. 1959); see also Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is

60

presented where, as here, the sentence is within the range prescribed by state law."), the claim also fails.  Grand larceny in the second degree is a Class C felony under New York law. N.Y. Penal L. § 155.40.  The maximum sentence for a defendant with no criminal record who is convicted of a Class C felony is an indeterminate sentence of five to fifteen years.  N.Y. Penal L. § 70.00(1), (2), (3)(b); the maximum sentence for an individual, such as petitioner, who has a prior felony conviction is an indeterminate sentence of seven and one-half to fifteen years. N.Y. Penal L. § 70.06(3)-(4).  Since petitioner's sentence was within the range permitted by New York State law, it does not violate the due process clause.

          Finally, if petitioner is claiming that the length of his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment, it also fails.  A sentence can violate the Eighth Amendment when the sentence is "grossly disproportionate" to the crime committed or when the sentence imposed "shocks the collective conscience of society."  United States v. Gonzalez, 922 F.2d 1044, 1053 (2d Cir. 1991); see also Kennedy v. Louisiana, 128 S.Ct. 2641, 2649 (2008); Atkins v. Virginia, 536 U.S. 304, 311 (2002); Lockyer v. Andrade, supra, 538 U.S. at 73; Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); United States v. Snype, 441 F.3d 119, 152 (2d Cir. 2006); United States v. Romano, 825 F.2d 725, 731 (2d Cir. 1987); Pressley v.

Bennett, 235 F. Supp.2d 349, 368-69 (S.D.N.Y. 2003); Calderon v.
Keane, 97 Civ. 2116 (RCC)(JCF), 2002 WL 1205745 at *14 (S.D.N.Y.
Feb. 21, 2002) (Report & Recommendation), adopted by 2003 WL
22097504 (S.D.N.Y. Sept. 9, 2003); Sutton v. Herbert, 39 F.
Supp.2d 335, 337 (S.D.N.Y. 1999); see generally Ewing v. Califor-
nia, 538 U.S. 11 (2003).

        A habeas court will find that a state-law sentence is
"grossly disproportionate" and violates the Eighth Amendment only
"in the 'exceedingly rare' and 'extreme' case." Lockyer v.
Andrade, supra, 538 U.S. at 73, quoting Harmelin v. Michigan,
supra, 501 U.S. at 1001; accord Ewing v. California, supra, 538
U.S. at 21; United States v. Snype, supra, 441 F.3d at 152;
Whitlatch v. Senkowski, 344 F. Supp.2d 898, 905-07 (W.D.N.Y.
2004); Vasquez v. Walker, 01 Civ. 8032 (AKH), 2004 WL 594646 at
*5 (S.D.N.Y. Mar. 25, 2004); Ayala v. People, 03 Civ. 2762 (AKH),
2004 WL 527035 at *5 (S.D.N.Y. Mar. 16, 2004); Williams v.
Philips, 02 Civ. 5811 (DC), 2003 WL 21961127 at *8 (S.D.N.Y. Aug.
18, 2003).

        Petitioner's sentence for stealing more than $50,000
from charities who were attempting to assist the victims of the
attack on the World Trade Center was well within the range
permitted by the Eight Amendment. Ewing v. California, supra,
538 U.S. 11 (sentence of 25 years to life imposed on recidivist
for stealing three golf clubs not cruel and unusual); Lockyer v.

Andrade, supra, 538 U.S. 77 (sentence of 25 years to life for stealing $150 worth of videotapes not cruel and unusual); Rummel v. Estelle, 445 U.S. 263 (1980) (sentence of life imprisonment for third-time felon who had, over the course of nine years, committed three larcenies with loss amounts of $80.00, $28.36 and $120.75, respectively, not cruel and unusual punishment).

Thus, petitioner has no viable claim concerning his sentence.

### h.  Vague, Conclusory or Unintelligible Claims

Finally, respondents request that I dismiss Flemming's purported claims that are vague, conclusory or unintelligible.  A federal habeas petition "may be dismissed if it contains only vague or conclusory allegations," Blackledge v. Allison, 431 U.S. 63, 75 (1977), and must "specify all the grounds for relief available to the petitioner," Habeas Rules Rule 2(c)(1). Flemming's purported claims mentioned in note 12, above, are vague and wholly conclusory, and those mentioned in note 13, above, are so unintelligible that I cannot find that they "specify . . . grounds for relief."  Therefore, these claims do not afford Flemming a basis for habeas relief.

IV.   Conclusion

Accordingly, for all the foregoing reasons, I respectfully recommend that the petition be denied.

In addition, because Flemming has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued. 28 U.S.C. § 2253.  To warrant the issuance of a certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam) (internal quotation marks omitted); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005) (per curiam).  For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that Flemming's federal rights were not violated.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).

V.   <u>Objections</u>

        Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have ten
(10) days from receipt of this Report to file written objections.
<u>See</u> <u>also</u> Fed.R.Civ.P. 6(a) and 6(e).  Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
Richard J. Holwell, United States District Judge, 500 Pearl
Street, Room 1950, and to the Chambers of the undersigned, 500
Pearl Street, Room 750, New York, New York 10007.  Any requests
for an extension of time for filing objections must be directed
to Judge Holwell.  FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL**
RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE
REVIEW.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v.</u>
<u>Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997); <u>IUE AFL-CIO</u>
<u>Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank</u>
<u>v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Wesolek v. Canadair</u>

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-238 (2d Cir. 1983).

Dated:   New York, New York
         August 10, 2009

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Mr. Woodrow Flemming
03-A-5259
Upstate Correctional Facility
P.O. Box 2001
Malone, New York  12953

Jodi A. Danzig, Esq.
Assistant Attorney General of
  the State of New York
120 Broadway
New York, New York  10217

66